J-S33017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: R.J.B., A MINOR | : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.B., MOTHER | : | No. 1840 EDA 2022 |

Appeal from the Decree Entered July 14, 2022
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-AP-0000155-2022

BEFORE:  KUNSELMAN, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY KING, J.:                **FILED DECEMBER 28, 2022**

Appellant, A.B. ("Mother") appeals from the decree entered in the Philadelphia County Court of Common Pleas, which granted the petition of the Philadelphia Department of Human Services ("DHS") for the involuntary termination of Mother's parental rights to her minor child, R.J.B. ("Child").  We affirm.

The relevant facts and procedural history of this case are as follows.  On February 10, 2020, when Child was two years old, DHS received a report alleging that Mother struck Child, showed signs of severe depression and mental instability and did not have family support.  On March 7, 2020, DHS received a second report regarding Mother from Thomas Jefferson Hospital after the birth of her second child.  The hospital staff reported observing Mother speak very harshly to Child, cursing and yelling at Child, and being

unresponsive to the newborn baby's needs.

As a result, the Community Umbrella Agency ("CUA") began providing in-home services for Mother on March 25, 2020. At the time, Mother resided at a shelter where she was observed striking Child, calling Child names and refusing to provide basic care for Child. Staff at the shelter noted that Mother would often refuse to allow Child entry into their room and leave Child alone in the hallway. CUA attempted to implement a safety plan which included services for mental health, parenting, employment, and housing. However, Mother was largely unresponsive to CUA's intervention efforts, often physically turning her back to CUA staff and refusing to engage with them. Mother was also largely uncooperative with CUA's efforts to provide services for Child who appeared to be developmentally behind. Additionally, CUA staff noted that Mother was unable to appropriately redirect Child, often screaming and cursing at her.

Mother obtained transitional housing through the Philadelphia Housing Authority ("PHA"). After CUA staff observed Mother strike Child and curse at her, DHS filed a petition to adjudicate Child dependent. The trial court adjudicated Child dependent on June 16, 2020, and ordered DHS to supervise the family. The court further ordered Mother to seek mental health treatment, participate in anger management classes, obtain housing, obtain employment and ensure that Child's needs were met. After an incident where Mother refused to allow CUA staff to enter her home while Child was screaming and

crying, CUA obtained an order of protective custody on August 6, 2020. Pursuant to the order, Child was removed from Mother's care and placed in foster care. At various permanency review hearings, the trial court further ordered Mother to undergo a parenting capacity evaluation, a behavioral health services evaluation, and to follow all recommendations.

On March 8, 2022, DHS filed a petition seeking to involuntarily terminate Mother's parental rights to Child. The trial court held an evidentiary hearing on July 14, 2022. Erica Butler, a CUA supervisor, testified to the factual history stated above. Ms. Butler further testified that Mother did not adequately comply with court ordered requirements prior to the termination hearing. Mother did not undergo a parenting capacity evaluation. Mother did attend a behavioral health services evaluation but did not comply with the recommendation that she participate in cognitive behavior therapy and mood regulation therapy. Although Mother participated in an anger management program and parenting classes, Mother continued to exhibit inappropriate behavior to Child and CUA staff. During supervised visits with Child, Mother was unable to properly redirect Child and continued to berate her, often yelling and cursing at Child. When CUA staff attempted to redirect Mother, Mother would become "explosive."

Additionally, Ms. Butler testified that Mother failed to cooperate with PHA to acquire permanent housing. At the time of the hearing, Mother was in the process of being evicted from her transitional housing. Ms. Butler stated

that she attempted to coordinate several meetings with Mother and PHA staff to assist Mother in securing appropriate housing but Mother refused to cooperate. Additionally, PHA staff sent Mother monthly emails of housing leads but Mother refused to meet with PHA staff or follow-up on the housing leads. When Ms. Butler inquired about Mother's housing needs, Mother stated that it was CUA's job to find her housing. Additionally, Ms. Butler testified that Mother provided one or two paystubs throughout the pendency of the case as proof of employment but one of the paystubs appeared to be fraudulent. Therefore, Ms. Butler was unable to verify if Mother was employed.

Mother has attended between forty to fifty percent of her supervised visits with Child. Mother has never progressed past supervised visitation and many of the same issues persist in Mother's ability to parent Child. Ms. Butler testified that Child's relationship with Mother seems very diminished and detached. During visits, Mother does Child's hair and there is little to no communication between them. Child becomes devoid of personality and completely closes up when she is around Mother. Additionally, Child has physical reactions, such as nightmares and wetting the bed, after her visits with Mother.

Child has been in her current foster home since May 21, 2021. Child's foster family provides a loving, safe, stable environment for Child and Child is flourishing. Child is taking dance lessons and enjoying the role of being a

sibling to the foster family's new baby. Child's primary parent-child bond is with her foster mother. Child calls her foster mother "mom" while she refers to Mother by her name. Additionally, when Ms. Butler first tried to speak to Child about the prospect of returning to live with Mother, Child began screaming and crying. Whenever Ms. Butler brings up the conversation, Child becomes visibly upset and clearly stated that she does not wish to leave her foster mother.

Mother chose to participate in the termination hearing via phone. Partway through Ms. Butler's testimony, Mother disconnected herself from participating in the hearing and did not return or provide testimony. At the conclusion of the evidence, the trial court involuntarily terminated Mother's parental rights to Child on July 14, 2022.[1] On July 18, 2022, Mother filed a timely notice of appeal and a contemporaneous concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i).

Mother raises the following issues for our review:

> Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, A.B. pursuant to 23 Pa.C.S.A. section 2511(a)(1) where Mother presented evidence that she tried to perform her parental duties.

> Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, A.B. pursuant to 23 Pa.C.S.A. section 2511(a)(2) where Mother presented evidence that she has remedied her situation by maintaining

---

[1] Child's father has not participated in any proceedings throughout the pendency of this case despite multiple efforts to locate and communicate with him.

housing, taking parenting classes and anger management classes and has the present capacity to care for her child.

Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, A.B. pursuant to 23 Pa.C.S.A. section 2511(a)(5) where evidence was provided to establish that the child was removed from the care of the Mother and Mother is now capable of caring for her child.

Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, A.B. pursuant to 23 Pa.C.S.A. section 2511(a)(8) where evidence was presented to show that Mother is now capable of caring for her child after she completed parenting classes, secured and maintained housing and completed anger management.

Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, A.B. pursuant to 23 Pa.C.S.A. section 2511(b) where evidence was presented that established she had lived with her Mother for the most part of her life. Additionally, Mother maintained that bond by visiting with her.

(Mother's Brief at 7).

In her issues combined, Mother contends that she has never evidenced a settled purpose of relinquishing her parental rights to Child nor has she refused to perform her parental duties. Mother argues that she has made significant progress in meeting her court-ordered goals by completing a mental health evaluation, an anger management program and parenting classes. Mother further avers that there was insufficient evidence to demonstrate a present incapacity to parent Child. Mother claims that she has obtained housing and employment and has the present capacity to provide a safe environment for Child. Additionally, Mother maintains that she regularly

attends her visits with Child and has a strong parental bond with Child. Mother concludes that the trial court erred in finding that there were grounds to involuntarily terminate Mother's parental rights and this Court must vacate the decree terminating her parental rights. We disagree.

Appellate review of termination of parental rights cases implicates the following principles:

> In cases involving termination of parental rights: "our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child."

*In re Z.P.*, 994 A.2d 1108, 1115 (Pa.Super. 2010) (quoting *In re I.J.*, 972 A.2d 5, 8 (Pa.Super. 2009)).

> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. … We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> *In re B.L.W.*, 843 A.2d 380, 383 (Pa.Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004) (internal citations omitted).
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> *In re Adoption of A.C.H.*, 803 A.2d 224, 228 (Pa.Super. 2002) (internal citations and quotation marks omitted). The standard of clear and convincing evidence means testimony

that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. ***In re J.D.W.M.***, 810 A.2d 688, 690 (Pa.Super. 2002). We may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*). If the court's findings are supported by competent evidence, we must affirm the court's decision, even if the record could support an opposite result. ***In re R.L.T.M.***, 860 A.2d 190, 191-92 (Pa.Super. 2004).

***In re Z.P., supra*** at 1115-16 (quoting ***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008)).

DHS filed a petition for the involuntary termination of Mother's parental rights to Child on the following grounds:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for [her] physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

- 8 -

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). "Parental rights may be involuntarily terminated where any one subsection of Section 2511(a) is satisfied, along with consideration of the subsection 2511(b) provisions." ***In***

- 9 -

*re Z.P., supra* at 1117.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of …her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (internal citations omitted).

To satisfy the requirements of section 2511(a)(1):

> [T]he moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition, Section 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to Section 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa.Super. 2008) (internal citations omitted).

The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not

limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. ***In re A.L.D.***, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities." ***Id.*** at 340. Under Section 2511(a)(2), "the petitioner for involuntary termination must prove (1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." ***In Interest of Lilley***, 719 A.2d 327, 330 (Pa.Super. 1998).

"Termination of parental rights under Section 2511(a)(5) requires that: (1) the child has been removed from parental care for at least six months; (2) the conditions which led to removal and placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." ***In re Z.P., supra*** at 1118.

Regarding the six-month period prior to filing the termination petition:

> [T]he trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of …her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

***In re B., N.M.***, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa.

718, 872 A.2d 1200 (2005) (internal citations omitted).

"[T]o terminate parental rights under Section 2511(a)(8), the following factors must be demonstrated: (1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). "Section 2511(a)(8) sets a 12-month time frame for a parent to remedy the conditions that led to the children's removal by the court." *In re A.R.*, 837 A.2d 560, 564 (Pa.Super. 2003). Once the 12-month period has been established, the court must next determine whether the conditions that led to the child's removal continue to exist, despite the reasonable good faith efforts of DHS supplied over a realistic time. *Id.* Termination under Section 2511(a)(8) does not require the court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of DHS' services. *In re Adoption of T.B.B.*, 835 A.2d 387, 396 (Pa.Super. 2003); *In re Adoption of M.E.P., supra*.

Under Section 2511(b), the court must consider whether termination will meet the child's needs and welfare. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006). "Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying

close attention to the effect on the child of permanently severing the bond."

*Id.*  Significantly:

> In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship.
>
> When conducting a bonding analysis, the court is not required to use expert testimony.  Social workers and caseworkers can offer evaluations as well.  Additionally, Section 2511(b) does not require a formal bonding evaluation.

*In re Z.P., supra* at 1121 (internal citations omitted).

"The statute permitting the termination of parental rights outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements within a reasonable time following intervention by the state, may properly be considered unfit and have …her rights terminated."  *In re B.L.L.*, 787 A.2d 1007, 1013 (Pa.Super. 2001).  "[A] parent's basic constitutional right to the custody and rearing of …her child is converted, upon the failure to fulfill …her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment."  *Id.* at 856.

Instantly, the court determined that termination was proper under Section 2511(a)(1), (2), (5) and (8).  Regarding Section 2511(a)(1), the court found that Mother has failed to take any action to demonstrate her ability or desire to parent Child for well over six months prior to the filing of the termination petition.  The record supports the court's finding.  Although

Mother has taken parenting classes and completed an anger management program, Mother's persistent volatile interactions with Child and CUA staff demonstrate Mother's unwillingness to learn skills to properly parent Child. Further, Mother has failed to follow through with the mental health treatment recommendations of her behavioral health services evaluation. Contrary to Mother's assertions that she acquired appropriate housing and employment, the evidence demonstrates that Mother has taken no steps to acquire permanent housing and rebuffed all efforts to assist her in this endeavor. Ms. Butler also testified that Mother has not provided any reliable evidence of employment. Additionally, Mother did not testify or provide any explanation for her conduct. Accordingly, we discern no error in the court's determination that termination was proper pursuant to Section 2511(a)(1). **See In re Z.S.W., supra**.

Regarding Section 2511(a)(2), the court determined that Mother does not have the present capacity to parent Child and has made little progress throughout the pendency of this case. Mother refuses to cooperate with CUA or PHA to acquire appropriate housing or employment in order to provide a safe and stable environment for Child. Additionally, Mother has only attended fifty percent of her visits with Child and has not progressed beyond supervised visitation. Mother's interactions with Child during these visits demonstrate Mother's inability to appropriately redirect or communicate with Child. Further, Mother's anger management issues persist and result in upsetting

- 14 -

Child to such a degree that she has negative physical reactions to visits with Mother. On this record, we agree with the court that termination was proper under Section 2511(a)(2). *See In Interest of Lilley, supra*.

Additionally, Child had been removed from Mother's care since August 6, 2020, which is well over the respective six and twelve-month thresholds of Sections 2511(a)(5) and (8). *See* 23 Pa.C.S.A. § 2511(a)(5), (8). The court found that the conditions which led to Child's removal continue to exist and Mother has not taken action to remedy those conditions in a reasonable time. The court also noted that Mother has not cooperated with CUA or PHA in their attempts to provide her with services. As previously stated, Mother's supervised visits with Child demonstrate that Mother's anger management issues persist, and she has not acquired the skills required to properly parent Child. Based on Mother's uncooperative and obstructive conduct since Child has been removed from her care, the court found that Mother is unlikely to remedy these issues in the near future to be able to provide Child with the care she requires. Accordingly, we discern no error with the court's determination that termination was proper under Sections 2511(a)(5) and (8). *See In re Z.P., supra*.

Regarding Section 2511(b), the court determined that there was no parental bond between Mother and Child and termination was in Child's best interests. The record supports the court's conclusion. Ms. Butler testified that there is minimal communication between Mother and Child during their visits

and Child closes up entirely when she is around Mother. Additionally, Mother continues to berate and upset Child such that Child has nightmares and wets the bed after visits with Mother. In comparison, Child has a strong parental bond with her foster mother who she calls "mom" and a positive relationship with the rest of her foster family. All of Child's needs are met and Child is happy and thriving in her current placement. Further, Child has expressed a clear and strong desire to remain with her foster family. On this record, the court correctly determined that terminating Mother's parental rights would not destroy an existing, necessary, and beneficial relationship for Child and would best serve Child's needs and welfare. *See In re Z.P., supra*.

Based upon the foregoing, the record supports the court's conclusion that clear and convincing evidence supported termination of Mother's parental rights under Sections 2511(a)(1), (2), (5), (8) and (b). *Id.* Consequently, we affirm the decree terminating Mother's parental rights to Child.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/28/2022